In the Matter of the Estate of JOHN A. DAVIS, Deceased.

Surrogate's Court, New York County, May 28, 1926.

**Trusts — testamentary trust — distribution of extraordinary stock dividend declared by corporation in which trustees hold shares among assets of trusts created by decedent's will — voting power of stock held for remaindermen is not diminished by paying any of stock dividend to life beneficiaries — distribution of dividend among life beneficiaries does not deprive remaindermen of property rights in violation of United States Constitution — proportion of distribution of stock dividend must be made as of date of decedent's death — life beneficiaries entitled to dividend.**

In an accounting proceeding involving the question of the distribution of an extraordinary stock dividend declared by a corporation, in which the trustees held, among the assets of the trust created under the will, some 600 shares of stock, the fact that any of the stock dividend is paid to life beneficiaries neither diminishes the voting power of the stock held for remaindermen nor amounts to a deprivation of property rights in violation of the Federal Constitution for the reason that the extraordinary dividend payable from the accumulated earnings of the company whether in cash or in stock belongs to the life beneficiary unless it entrenches in whole or in part upon the capital of the trust fund; the value of the original stock holdings in the trust fund as of the date of decedent's death has been unchanged by the declaration of the stock dividend and the position of the remaindermen is the same as if all the accumulated earnings had been distributed in cash dividends instead of retaining them in the surplus.

The apportionment must be made as of the date of decedent's death since that was the date when the trusts were created; the several *cestuis que trustent* were entitled to the income of the trusts from that date, particularly in the absence of anything in the will which indicates a contrary design or warrants a postponement of the creation of the trusts beyond that date.

In view of the fact that, at the date of decedent's death, the book value of the stock was $210.10 and at the date of the declaration of the dividend the book

value was $220.30, the extraordinary dividend must have been declared by the corporation out of surplus earnings and, under the laws of this State, must be paid to the life beneficiaries.

PROCEEDING for accounting by testamentary trustees.

*Wise, Whitney & Parker,* for the trustees.

*Battle, Vandiver, Levy & Van Tine* [*George Gordon Battle* and *Addison A. Van Tine* of counsel], for Frances Rice Davis and Amo Pauline S. Banks.

*John J. Cray,* special guardian.

*Alvin M. Higgins,* for John Davis Orth and Helen J. Davis MacDonald.

FOLEY, S.   On this accounting a question of the distribution of an extraordinary dividend is involved.   The trustees hold, among the assets of the trusts created under the will, 600 shares of the St. Croix Paper Company.   In March, 1926, they received a stock dividend of 200 shares.   They ask in their accounting for the instructions of the surrogate as to the proper distribution to be made of the same.

The remaindermen claim the entire stock dividend, and like claim is made by the life beneficiaries.   Under the authorities of this State the tests to be applied are (1) the source of the property paid out in the form of an extraordinary dividend, and whether there has been a distribution or division of the earnings, profits or accumulations of the corporation; (2) the language of the will.   (*Matter of Osborne,* 209 N. Y. 450; *U. S. Trust Co. v. Heye,* 224 id. 242; *Matter of Schaefer,* 178 App. Div. 117; affd., 222 N. Y. 533.)

(1)   The remaindermen contend, *first,* that a stock dividend is not income, but must be deemed to be a distribution of capital, and that the failure to add the extraordinary dividend to the corpus of the trusts deprives them of their property without due process of law, in violation of the Federal Constitution.   The contention that the voting power of the stock held for the remaindermen is diminished by paying any of the stock dividend to the life beneficiaries, and that this amounts to a deprivation of property rights in violation of the Constitution, is without foundation.   The value of the original stock holdings in the trust fund as of the date of death has been unchanged by the declaration of stock dividends. The position of the remaindermen is just the same as if all the accumulated earnings had been distributed in cash dividends instead of retaining them in the surplus.   If the company had needed new capital, and instead of pursuing a policy of economy by retaining the surplus earnings in surplus, the corporation had issued and sold

new capital stock for necessary corporate purposes, the voting power of the stock in the original trust would likewise have been diminished. In any case, therefore, where the earnings are distributed in cash, or in the form of stock dividends, the result is the same. (*Matter of Rogers*, 22 App. Div. 428.)

In *Matter of Osborne* (209 N. Y. 450, 467) the court said: " In *Matter of Rogers* (22 App. Div. 428 [1897]) the questions before the court relate to the division of the property of a corporation in liquidation. The opinion is an instructive one and in it the court, referring to a going concern and to extraordinary dividends, say: ' When the former declares a dividend the title to the money is taken from the corporation and vested in the shareholder; whether rightly or wrongly declared, as a matter of fact the money is separated from the share of stock; it is no longer a part of the capital of the company. * * * ' "

SCOTT, J., in the prevailing opinion of the court in *Matter of Schaefer* (178 App. Div. 117; affd., 222 N. Y. 533), in holding that these profits belonged to the beneficiary, said: " The reason for the rule which requires, in case of a complete liquidation of a corporation, that an apportionment be made between capital and income, seems to me inevitably to require that a like apportionment be made in the present case. Otherwise, as pointed out by CULLEN, J., in *Matter of Rogers* (22 App. Div. 428), the accumulated profits will go to the unlawful increase of the corpus of the estate and the enrichment of the remaindermen at the expense of the life beneficiary."

The principal cases cited by the remaindermen to maintain this point are not applicable to the question before me. In *Gibbons* v. *Mahon* (136 U. S. 549) the stock dividend represented investment of earnings in the capital of the company, and was not a distribution of accumulated surplus earnings. The *Gibbons* case has been before the Court of Appeals repeatedly. It does not lay down any rule which is binding upon the courts of this State. It is mentioned in *Matter of Rogers* (*supra*) and its effect was presented to the Court of Appeals in *Matter of Osborne* (*supra*). In all the recent decisions the distinction between the rules in the various States and countries and that of New York has been fully discussed. The rule has been repeatedly stated to be based upon our statute against void accumulations, which prohibits the unlawful retention in the trust in any form whatsoever of earnings upon the trust property. (*Matter of Schaefer, supra.*) The other cases cited have to do with income tax proceedings. I had occasion to distinguish this class of cases in a proceeding similar to this in *Matter of Roberts* (117 Misc. 794). The courts of this State have

laid down the rule to be applied in the allocation of stock dividends between life beneficiaries and remaindermen. (*Matter of Osborne*, 209 N. Y. 450; *Bourne* v. *Bourne*, 240 id. 172.) In the former case (at p. 477) the court said: " Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund." This rule, I hold, is the proper one to be applied here. The constitutional question raised must, therefore, be overruled.

(2) Originally the trustees held all the stock in the corpus of one of the trusts only. Some time later, upon application to the surrogate, this method was disapproved and the stock was directed to be distributed proportionately among the several trusts created under the will. (*Matter of Davis*, 113 Misc. 419.)

The remaindermen contend, *second*, that in apportioning the stock dividend, the date of the decree effecting this distribution, November 30, 1920, must be taken as the date upon which the trusts were created, *i. e.*, the date upon which the trusts were actually set up. With this contention I do not agree. The several *cestuis que trustent* were entitled to the income of the trusts from the date of death. That was the date when the trusts were created. There is nothing in the language of this will to indicate a contrary design, nor any direction to postpone the creation of the trusts beyond this point. I hold that under the will of testator, the trusts were created as of the date of his death on December 18, 1918, and the apportionment is to be made as of that date. (*Matter of Bird*, 241 N. Y. 184.)

(3) The facts are stipulated. At the date of the death of testator on December 18, 1918, the book value of the stock was $210.10. On March 31, 1925, the date of the payment of the dividend, the book value was $220.30. It appears, therefore, that the extraordinary dividend was declared by the St. Croix Paper Company out of surplus earnings, and under the law of this State it should be paid to the life beneficiaries.

Submit decree dismissing the objections and distributing the entire stock dividend of 200 shares among the life beneficiaries of the various trusts proportionately.